Question Submitted by: Vicki Zemp Behenna, Office of the District Attorney, 7th District
2024 OK AG 15
Decided: 10/30/2024
Oklahoma Attorney General Opinions
Cite as: 2024 OK AG 15, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Whether the amendments to House Bill 2537 (2023) to title 22, section 34.1 prohibit the prosecution of peace officers who use excessive force?
I.
SUMMARY
¶1 House Bill 2537's amendments to section 34.1(A) of title 22 should not be construed to prohibit the prosecution of peace officers who utilize excessive force. The amendments to section 34.1(A) should instead be read to require the prosecution to establish that excessive force was used beyond a reasonable doubt in addition to all other elements of the charged offense.
II.
BACKGROUND
¶2 Since its enactment in 1992, section 34.1 of title 22 of the Oklahoma Statutes has subjected peace officers using excessive force while performing their law enforcement duties to the criminal laws of this state. Until 2023, peace officers could ostensibly be convicted for using force that violated only their law enforcement agency's internal policies and guidelines. At least theoretically, this created the anomalous situation where, for example, an Oklahoma City police officer who used a certain degree of force may have committed a crime while a Tulsa police officer who used the identical amount of force under precisely the same circumstances, would not have committed a crime if their respective department's policies differed.
¶3 Enter House Bill 2537 in 2023. Passed with significant support in both chambers, House Bill 2537 eliminated the reference to internal policies and guidelines as a basis for prosecuting a peace officer for using excessive force. Now, a peace officer cannot be charged and tried for violating his or her law enforcement agency's policies and guidelines. All peace officers in Oklahoma accused of utilizing excessive force are now judged using the same test: Was the force reasonably necessary under the circumstances at the time that the peace officer used force? (B).
¶4 However, another amendment in House Bill 2537 prompts this request, specifically the Legislature's insertion of the following emphasized language in section 34.1(A):
Any peace officer, as defined in Section 648 of Title 21 of the Oklahoma Statutes, who uses excessive force in pursuance of such officer's law enforcement duties shall be subject to the criminal laws of this state to the same degree as any other citizen, if excessive force is established as an element of any alleged violation under the criminal laws of this state. As used in this section and Section 34.2 of this title, "law enforcement duties" means duties carried out while acting as a peace officer pursuant to Section 99a of Title 21 of the Oklahoma Statutes. 
(A) (emphasis added). Crucially, your question centers on the statute's use of the word "element." More specifically, you inquire (1) whether this new language requires a criminal offense to already include excessive force as an element of the offense or (2) if the State has to additionally prove that the officer used excessive force. Following an exhaustive review of the Oklahoma Statutes, this office did not identify any offenses within Oklahoma's criminal code that contain an independent element of "excessive force." As a result, the rules of statutory construction will be applied to ascertain the statute's purpose and intent.
III.
DISCUSSION
¶5 The Legislature did not alter the pre-existing language in section 34.1(A). The language still holds peace officers who utilize excessive force "subject to the criminal laws of this state to the same degree as any other citizen . . . ." The amendatory language after the word 'citizen,' clarifies that the use of "excessive force" must be proven by the prosecution beyond a reasonable doubt but does not limit the prosecution of peace officers who use excessive force to offenses that contain "excessive force" as an independent element.
¶6 Three considerations require this conclusion. First, the Legislature retained language contained within section 34.1 subjecting peace officers who utilize excessive force to Oklahoma's criminal laws, indicating a desire not to legalize the use of excessive force. Second, to avoid rendering section 34.1 useless and superfluous, the added language cannot be read in a vacuum to limit prosecutions only when the offense committed contains "excessive force" as an independent element. Third, the only reasonable construction consistent with the purpose of the statute and with Oklahoma public policy, as expressed by the Legislature in enacting , is to permit the prosecution of the small number of peace officers who violate the law by utilizing excessive force. Construing a statute designed to penalize and prevent police brutality in a manner that would effectively legalize the use of excessive force leads to an absurd result and would be contrary to the Legislature's intent.
¶7 "Statutes are to be construed to determine the intent of the Legislature, reconciling provisions, rendering them consistent and giving intelligent effect to each." State ex rel. Pruitt v. Steidley, , ¶ 12, , 557 (quoting State ex rel. Mashburn v. Stice, , ¶ 11, , 250) (internal punctuation and citations omitted):
To ascertain the intention of the Legislature in the enactment of a statute, we may look to each part of the statute, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation. Each part of the various statutes must be given intelligent effect. This Court will not presume the Legislature to have done a vain thing. We are mindful that elementary rules of statutory interpretation require us to avoid any statutory construction which would render any part of a statute superfluous or useless. Where possible, the statutory amendments should be reconciled or construed together.
¶8 If the Legislature desired to prohibit the prosecution of peace officers who utilize excessive force, it could have easily accomplished this policy shift with a one-word amendment to section 34.1(A). By inserting the word "not" after the word "shall," the amendment could have read, "Any peace officer . . . who uses excessive force in pursuance of such officer's law enforcement duties shall not be subject to the criminal laws of this state." In doing so, the Legislature could have simply and definitively legalized the use of excessive force by peace officers. It did not.
¶9 Even more, restricting the prosecution of peace officers to offenses that independently contain an excessive force element would render the entire statute useless and superfluous by effectively legalizing peace officers' use of excessive force contrary to both the pre-existing, unaltered statutory text and the primary purpose of the statute. Conceptually, similar provisions exist in other statutes, but the specific phrase "excessive force" is unique to section 34.1(A). Further, an analogous concept also appears in Oklahoma Statutes setting forth affirmative defenses to crimes. Another statute employs the term "ordinary force," not as an element but to clarify and limit the definition of child abuse. In common, none of these statutes creates a statutory element of "excessive force." Even if the "unreasonable force" element of Child Abuse Murder or the "perpetrated unnecessarily" element of First-Degree Manslaughter were stretched to encompass section 34.1's "excessive force" requirement, limiting prosecution of police brutality to Child Abuse Murder or First-Degree Manslaughter would frustrate the statute's purpose. Crucially, defining the boundaries of an affirmative defense differs distinctly from imposing a statutory element.
¶10 Finally, the Oklahoma Court of Criminal Appeals (OCCA) disfavors construing statutes in a manner that leads to an absurd result. Taylor v. State, , ¶ 15, , 511; Lewis v. City of Oklahoma City, , ¶ 2, , 900. Construing section 34.1(A) as limiting prosecution of police brutality to offenses that contain an independent element of "excessive force" leads to an absurd result because, as discussed above, no existing offenses contain that specific element. Requiring excessive force to be an element would effectively immunize Oklahoma peace officers from prosecution in instances of police brutality.
¶11 This result becomes even more absurd considering the Legislature's purpose in enacting this particular statute. Section 34.1 came into existence in 1992 with the adoption of HB 2300, 1992 Okla. Sess. Laws ch. 146, § 1. House Bill 2300's bill title summarized the act's subject matter, in part, as "PROVIDING SANCTIONS FOR PEACE OFFICERS USING EXCESSIVE FORCE . . . ." (capitalization retained). As is the case here, courts--and this office--often review a bill's title to ensure accurate ascertainment of the Legislature's intended goals. "While the statutory language is of primary importance in ascertaining legislative intent, we may also look at the legislative summary of an act's purpose and its title, as well as its placement in the body of laws. However, the title of an act is only an aid to interpretation." Whirlpool Corp. v. Henry, , ¶ 4, , 84 (citations & footnotes omitted).
¶12 House Bill 2300 additionally clarified that peace officers who utilize excessive force are subject to criminal prosecution. It also mandated that peace officers must report other peace officers who they witness employ excessive force. 21 O.S.2021 § 34.2. Failure to report also carries a criminal sanction. Id. Clearly, the Legislature has expressed its intent that officers using excessive force and the officers who shield them from accountability act contrary to public policy.
¶13 The Legislature did not repeal section 34.1. The Legislature did not amend section 34.1 to exempt peace officers from criminal prosecution. House Bill 2537's amendatory language clarifying that the prosecution must prove the use of "excessive force" beyond a reasonable doubt to the trier of fact should not be construed in a manner that defeats the very purpose of the Legislature's enactment of section 34.1.
¶14 Having established that construing House Bill 2537's amendments to section 34.1 should not be construed as an implicit repeal of the very statute it amends, the obvious question becomes how should the amendments be construed? The use of the word "element" in the amendatory language of section 34.1 is unusual. Normally, courts are tasked with determining the elements of offenses based on their construction of a criminal statute. Doing so aids jurors and the parties in determining what facts must be proven to support a conviction for violating a particular statute. Furthermore, courts develop jury instructions using these elements of offenses to guide juries during deliberation.
¶15 While limited examples specifying what is not an element of an offense and what evidence is not required to satisfy a particular element of an offense exist in Oklahoma statutes, imposing a specific element of an offense like section 34.1's amendatory language is unique. By employing the word "element," the Legislature apparently chose to require that the prosecution prove "excessive force" to the trier of fact beyond a reasonable doubt rather than impose any burden of production on a defendant to demonstrate that the force used was reasonable through an affirmative defense.
¶16 As a result, the most logical, and perhaps only, way to give intelligent effect to both section 34.1's unaltered pre-existing language and House Bill 2537's added language is to instruct the trier of fact on the prosecution's burden to prove "excessive force" beyond a reasonable doubt in addition to the elements of the charged offense in prosecutions subject to section 34.1.
¶17 It is, therefore, the official Opinion of the Attorney General that:

Prosecution of peace officers for using excessive force is not limited to offenses that independently contain an "excessive force" element. When a peace officer is prosecuted for a crime involving the use of excessive force in pursuance of the officer's law enforcement duties, the State must prove, beyond a reasonable doubt, that the officer utilized excessive force in addition to the elements of the charged offense.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
THOMAS R. SCHNEIDER 
DEPUTY GENERAL COUNSEL 
JIMMY R. HARMON 
SENIOR DEPUTY ATTORNEY GENERAL
FOOTNOTES
 As used in the act, "excessive force" formerly meant physical force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity. The use of excessive force shall be presumed when a peace officer continues to apply physical force in excess of the force permitted by law or said policies and guidelines to a person who has been rendered incapable of resisting arrest. (B) (emphasis added). For clarification, this version of title 22, section 34.1 represents how the statute existed prior to the 2023 amendment.
 This bill, however, does not prohibit a law enforcement agency from taking employment action against a peace officer for violating the agency's policies and procedures on the use of force.
 As evident in section 34.1(A), making the determination that a peace office exercised excessive force requires an intensive, factual examination.
 As discussed above, the language concerning the element of excessive force follows a comma, breaking up the first sentence of section 34.1(A) into two parts. Interpreting statutes occasionally requires the application of the rules of grammar. Stricklen v. Multiple Injury Tr. Fund, , ¶ 15, , 866, as corrected (Jan. 31, 2024). On the one hand, applying such rules could suggest that the Legislature wanted to avoid restricting the first part of the sentence from the second part, the 2023 amendment. In this case, a skilled grammarian would likely consider the 2023 amendment as an unrestrictive clause. As an unrestrictive clause, it does not add essential information. In its absence, the sentence remains clear and communicates all necessary information. On the other hand, treating the second part as an unrestrictive clause renders it useless and fails to achieve the Legislature's desired aim: require the State to prove that excessive force occurred. As a result, the ordinary rules of grammar must yield to the rules of statutory construction.
 See ("Homicide is manslaughter in the first degree in the following cases: . . . 3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.") (emphasis added); (C):
A person commits murder in the first degree when the death of a child results from the willful or malicious injuring, torturing, maiming or using of unreasonable force by said person or who shall willfully cause, procure or permit any of said acts to be done upon the child pursuant to Section 843.5 of this title. It is sufficient for the crime of murder in the first degree that the person either willfully tortured or used unreasonable force upon the child or maliciously injured or maimed the child. 
(Emphasis added). See also Instruction Nos. 4-40D, 4-65A, 4-102, OUJI-CR(2d).
 (3--5):
To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases: . . . [w]hen committed either by the person about to be injured, or by any other person in such person's aid or defense, in preventing or attempting to prevent an offense against such person, or any trespass or other unlawful interference with real or personal property in such person's lawful possession; provided the force or violence used is not more than sufficient to prevent such offense; [w]hen committed by a parent . . . in the exercise of a lawful authority to restrain or correct such person's child . . . and the force or violence used is reasonable in manner and moderate in degree; and [w]hen committed by a carrier of passengers . . . in expelling . . . any passenger who refuses to obey a lawful and reasonable regulation . . . and the force and violence used is not more than is sufficient to expel the offending passenger, with a reasonable regard to such passenger's personal safety . . . .
(emphasis added); See also Instruction Nos. 8-1 to 8-18, 8-45 to 8-56, OUJI-CR(2d).
 ("Provided, however, that nothing contained in this act shall prohibit any parent, teacher or other person from using ordinary force as a means of discipline, including but not limited to spanking, switching or paddling.") (emphasis added). See also Instruction No. 4-35A, OUJI-CR(2d).
 During floor debate, Senator Todd Gollihare, the bill's Senate author, explained that House Bill 2537's purpose was to "establish[] excessive force as an element of any alleged violation of criminal law by a peace officer." Sen. Todd Gollihare, Okla. State S., Third Reading for H.B. 2537 (Apr. 18, 2023) https://sg001-harmony.sliq.net/00282/Harmony/en/PowerBrowser/PowerBrowserV2/20230418/-1/68359?startposition=20230418110022&mediaEndTime=20230418112440&viewMode=3&globalStreamId=3.
 If immunized from criminal prosecution, the only barriers to dissuade the bad apples among the peace officer ranks are potential employment consequences and federal 1983 lawsuits. See 42 U.S.C. § 1983.
 HB 2300's title in its entirety reads, "AN ACT RELATING TO CRIMINAL PROCEDURE; PROVIDING SANCTIONS FOR PEACE OFFICERS USING EXCESSIVE FORCE; DEFINING TERM; REQUIRING THE ADOPTION OF CERTAIN POLICIES AND GUIDELINES; REQUIRING PEACE OFFICERS TO REPORT INCIDENTS OF EXCESSIVE FORCE; SPECIFYING SUCH REPORT; PROVIDING EXCEPTIONS; PROVIDING PENALITES FOR FAILURE TO REPORT OR MAKING MATERIALLY FALSE STATEMENTS; PROVIDING FOR CODIFICATION; PROVIDING AN EFFECTIVE DATE; AND DECLARING AN EMERGENCY." (capitalization retained).
 Crafting jury instructions on matters of law is the purview of trial courts, not the Attorney General. , 856. Crafting uniform jury instructions to aid trial courts in fulfilling that obligation is the purview of the OCCA. , 577.2. OCCA utilizes the Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Criminal Jury Instructions (OUJI-CR Committee) to assist the court in that task. Prior to House Bill 2537's amendments to section 34.1, the OCCA requested that the OUJI-CR Committee "develop a uniform instruction for use in all future homicide prosecutions in this state involving the use of deadly force by a police officer." Sweeney v. State, No. F-2020-5, slip op. at 7 (Okla. Cr. App. Apr. 28, 2022) (unpublished).
 (B)(2) (". . . consent shall not be an element of the crime . . .")
 (A) ("The force necessary to constitute an element need not be actual physical force since fear, fright or coercion may take the place of actual physical force.")
 Whether any particular prosecution involves a crime of "excessive force in pursuance of such officer's law enforcement duties" thus triggering the duty to instruct on the prosecution's burden to prove "excessive force" is a mixed question of law and fact best left to the trial court's determination and is outside the scope of an attorney general's opinion. See (A)(5).